Ruffin, C. J.
 

 The bill is filed by the next of kin of John Patterson, deceased, against his executor, claiming distribution of two slaves, Simon and Hilly, as not being disposed of in his will. By that instrument the testator, after several legacies to some of his relations, gave to his natural son,
 
 *380
 
 William S. Patterson his lands, “and also all my personal estate of every kind and description ;” and he appointed the defendant, Duncan M. Kennedy, his executor, and the guardian oí his said son. By a codicil he provides as follows : “Having considered my negro man Simon, a slave, to be no part of the aforebequeathed property, I therefore constitute and ordain Duncan M. Kennedy the sole management and control over the aforesaid Simon. I also exclude Hilly, the said Simon’s daughter, as being no part of my property.
 

 There can be no doubt, .that the effect of the codicil must be to take the two slaves mentioned therein out of the general gift of the personalty, made in the will to the son ; for the intention of the testator could not have been more expressly declared on that head. And the opinion of the court is equally clear, that no benefit to the executor was intended or can be collected from the language of the codicil; and, consequently, that he takes here, according to the general rule, in trust, and not for himself. As to Hilly; she is declared to be no part of the testator’s property, and for that reason excluded from the operation of the will. He refuses to dispose of her at all; and, consequently, there is no gift of her to the executor. We think it is the same with respect to Simon. He is excluded from the property before bequeathed to the son, and that is all. He is given to no other person. But the testator adds: “ therefore,” that is, because I have taken him from my son and made no particular disposition of him, •“ I constitute D. M. Kennedy to have the sole management and control over him.” It is argued, that the word “control” imports a gift, as it excludes all interference from any other quarter. But we cannot think so. It signifies power or authority over the slave, and is nearly sy-nonimous with the term “management,” as here used, and does not purport to vest the property beneficially, or to confer the power of absolute disposition. The cases, that have heretofore been decided by the court on this point, have all turned upon express words of
 
 disposition
 
 by the executor
 
 as he might think proper. Powell
 
 v
 
 Powell,
 
 N. C. Term Rep. 315.
 
 Ralston
 
 v
 
 Telfair, 2
 
 Dev. Eq. Rep. 255.
 
 Rawles
 
 
 *381
 

 v Ponton,
 
 1 Ired. Eq, Rep. 334. Such language is indispensable to turn the executor, who by his office takes in trust, into a beneficial legatee. That the word
 
 “
 
 control” cannot do. But if it could, had it stood by itself, it cannot have that effect, when connected with “management:” which plainly shews, that the testator had -in view the executor’s acts as executor, and not as owner. That is further strengthened by what immediately follows with respect to Hilly ; “I
 
 also
 
 exclude Hilly as being no part of
 
 my
 
 propertyfrom which it is fairly inferrible, that he had not intended to give Simon as property. It is extremely probable, we think, that the testator intended a covert provision for emancipation ; but nothing of the kind is brought forward in either the bill or answer, and, therefore, we do not proceed on that ground in the decree. If that were true, it would only render it the clearer, that the executor does not take beneficially; and that we think clear enough, without resorting to the supposition of the secret trust alluded to; and, therefore, that the two slaves must be declared to be undisposed of by the testator, and to be held by the defendant in trust for the next of-kin.
 

 Per Curiam. Decree accordingly.